**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**PATRICIA LAHAR,**

                **Plaintiff(s),**        **CASE NUMBER: 05-72920**
                                        **HONORABLE VICTORIA A. ROBERTS**

**v.**

**OAKLAND COUNTY, a**
**corporate body,**

                **Defendant(s).**
_____/

**ORDER**

## I.     INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment and Defendant's Motion in Limine to Prohibit Testimony Regarding Bullying.  A hearing on Defendant's Motion for Summary Judgment was held on May 7, 2007.

For the reasons stated below, the Court **GRANTS** Defendant's Motion for Summary Judgment.  Defendant's Motion in Limine is **MOOT**.

## II.    BACKGROUND

Plaintiff Patricia Lahar is employed by Defendant Oakland County as an Administrator at Oakland County's Children's Village.  Children's Village is Oakland County's residential facility for children and youth referred by courts or other government agencies.

The highest position within Children's Village is that of Manager.  There are two positions directly subordinate to the Manager--Intake Services Administrator and

Residential Services Administrator.  Plaintiff is the Intake Services Administrator and Peter Balzerine is the Residential Services Administrator.  In January 2003, Manager Michaele Worrell announced his retirement, effective March 2003.  Plaintiff and another Children's Village employee whom Plaintiff supervised, Joanna Overall, were interviewed for the position.  Overall was selected and assumed her new duties on April 1, 2003.

On April 23, 2003, Plaintiff filed a lawsuit against Defendant in Oakland County Circuit Court alleging that she was not appointed Manager due to age discrimination. On March 3, 2004, the Circuit Court granted Defendant's Motion for Summary Disposition and dismissed Plaintiff's Complaint.  The dismissal was affirmed on appeal.

Plaintiff brings this action because she says Overall engaged in various acts of retaliation (described below) after Plaintiff filed the prior lawsuit, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §623(d) and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. §37.2101, *et seq.*  Defendant asks the Court to grant summary judgment on both claims.

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).  A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would

2

necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

3

## IV.     APPLICABLE LAW AND ANALYSIS

### A.     Applicable Law

Both the ADEA and the ELCRA prohibit an employer from retaliating against an employee for opposing illegal discrimination.  *See* 29 U.S.C. § 623(d); M.C.L. §37.2701(a).  The analysis under both statutes is substantially similar.  *Butts V McCullough*, 2007 W.L. 1296030, *4 n.3 (6th Cir. 2007)(unpub. op.);  *Hines v Ohio State University*, 3 F.Supp.2d 859, 875 (S.D. Ohio 1998); *Barrett v Kirtland Community College,* 245 Mich. App. 306, 314 (2001).

### B.     Clarification of Claims and Arguments Court will Consider

Before turning to Plaintiff's specific claims, the Court notes that Plaintiff filed a lengthy supplemental affidavit on the eve of the scheduled hearing.  The supplement includes a number of new claims based on alleged acts which occurred between 2003 and 2006 and, therefore, could have been asserted in Plaintiff's Response brief.  Also, it was submitted without the permission of the Court, long after briefing was complete, and without allowing Defendant adequate opportunity to respond or even review it prior to the hearing.  As Plaintiff failed to offer a reasonable explanation for her tardiness, the Court will disregard new allegations which could have been timely raised in Plaintiff's Response brief.

Secondly, Plaintiff significantly modified the arguments asserted in her brief during oral arguments.  In her brief, Plaintiff applied the four-prong *prima facie* test for retaliation (discussed more fully below) to each of her allegations.  *See* Pl. br. at pp. 8-13.  During oral arguments, however, Plaintiff conceded that only one of her allegations

individually satisfies each element.  But, citing *Jordan v City of Cleveland*, 464 F.3d 584 (6th Cir. 2006), Plaintiff argued that her burden is met for the rest of her allegations when they are considered in the aggregate.  Further, Plaintiff argues that Overall's series of alleged acts against her constitutes "bullying," which caused psychological harm and, thus, created materially adverse working conditions.  If the Court rejects the "bullying" theory, however, Plaintiff argued that *Jordan* still requires the Court to consider all but one of her claims in the aggregate to determine whether she met her *prima facie* burden.

Plaintiff did not assert the "bullying" theory in her brief, and the Court declines to consider her claim under the "bullying" theory because she failed to cite authority which indicates that it is a recognized theory of liability under federal or state law.  The Court also finds that it is unclear whether Plaintiff appropriately relies on *Jordan* for the proposition that she may aggregate a series of separate incidents to establish a *prima facie* claim since the *Jordan* Court did not address the issue of aggregated claims under the same cause of action.

In *Jordan*, the jury found in favor of plaintiff on his Title VII claims of race-based retaliation and racial and retaliatory harassment.  Defendant appealed arguing, *inter alia*, that the trial court erred in denying its motion for judgment as a matter of law pursuant to FRCP 50.  Like Plaintiff, Jordan's claims were based on a number of incidents over a period of time.  But, it appears the Court found that the allegations asserted in support of the retaliation claim were adverse standing on their own.  There is no indication that the Court aggregated plaintiff's claims.

The *Jordan* Court only aggregated the plaintiff's allegations in its analysis of his

harassment claim, which was alleged under a different standard than applies in this case. The elements of a Title VII retaliatory harassment claim are similar to the elements of an ADEA and ELCRA retaliation claim, but there are alternate means of proof which do not apply to simple retaliation claims. Specifically, a plaintiff may prove the third and fourth elements of a retaliatory harassment claim by showing that (3) the defendant took an adverse employment action towards the plaintiff *or the plaintiff was subjected to severe or retaliatory harassment*; and (4) that there was a causal connection between the protected activity and the adverse employment action, *or harassment. See Morris v Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000).

In its finding that plaintiff's aggregated claims proved that he was subjected to severe or retaliatory harassment, the *Jordan* Court noted that a "totality of the circumstances" approach is the appropriate means of making such a determination for harassment claims. *Jordan*, 464 F.3d at 598. The Court did not address whether the same analysis applies if, as here, a defendant only alleges that she was subjected to an adverse employment action, rather than harassment. Therefore, it is not clear that *Jordan* applies. In any event, the Court finds that Plaintiff failed to meet her burden under an individual or aggregate analysis.

### C.    Plaintiff Failed to Meet Her Burden

When a retaliation claim is based on circumstantial evidence, as in this case, the three-step burden shifting approach set forth in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973), applies:

First, the plaintiff has the burden of proving by the preponderance of

6

the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden [of production] shifts to the [employer] "to articulate some legitimate, nondiscriminatory reason for [the adverse employment action]." Third, should the [employer] carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*EEOC v Avery Dennison Corp.,* 104 F.3d 858, 862 (6th Cir. 1997)(*citing Texas Department of Community Affairs v Burdine,* 450 U.S. 248, 252-253 (1981))(emphasis omitted).

In order to establish a prima facie case of retaliation under either the ADEA or the ELCRA, Plaintiff must show:

(1) that [she] engaged in a protected activity; (2) that the defendant had knowledge of [her] protected conduct; (3) that the defendant took an adverse employment action towards [her]; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Weigel v Baptist Hosp. of East Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002); *Meyer v City of Center Line,* 242 Mich. App. 560, 568-569 (2000). A plaintiff's burden at the *prima facie* stage is not onerous; it is easily met. *Avery Dennison*, 104 F.3d at 861. But, the fourth element of a retaliation claim--causation--is analyzed differently under state and federal law. Under federal law, Plaintiff is only required "to show a causal relationship between the protected conduct and the adverse action." *Smith v City of Holland Board of Public Works,* 102 F.Supp. 2d 422, 429 (W.D. Mich. 2000). "In order to make such a showing, a plaintiff must produce evidence from which an inference can be drawn that his protected activity was likely the reason for the adverse action." *Id.* Michigan courts impose a higher burden. "To establish causation, the plaintiff must

show that his participation in [the protected activity] was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett,* 245 Mich. App. at 315.

Defendant does not dispute that the first and second elements of Plaintiff's *prima facie* claim are met. Defendant argues that Plaintiff's claim, nevertheless, fails at the *prima facie* stage because: 1) there is no evidence to support many of the claims; 2) the alleged acts were not materially adverse; and/or 3) there is no causal connection between the alleged acts and her lawsuit. Also, even if Plaintiff established a *prima facie* claim, Defendant asserts that she cannot show that its legitimate business reasons are a pretext for retaliation.

Defendant contends that Plaintiff's claims are not materially adverse because she was not discharged, demoted, or transferred, and she did not suffer any loss in the compensation, terms or conditions of her job. However, Plaintiff correctly points out that the Supreme Court in *Burlington Northern & Santa Fe Railway Co. v White*, 126 S.Ct. 2405, 2414 (2006), held that Title VII's anti-retaliation provision is not limited to work or employment related retaliatory acts and harm. And, an employee can establish the third element of a retaliation claim--an adverse employment action--by showing that she was subjected to any "materially" adverse action which might dissuade "a reasonable worker from making or supporting a charge of discrimination." *Id* at 2415. That is, employers are prohibited from engaging in conduct which would deter victims of discrimination from complaining to the EEOC, courts, or their employers. *Id.* However, "petty slights, minor annoyances, and simple lack of good manners" are not sufficient to create such a deterrence." *Id.*

A court must also consider the context in which an action takes place to determine whether it is materially adverse. *Id.* To illustrate the point, the *Burlington* Court cited examples of otherwise innocuous events which can constitute an adverse event under appropriate circumstances:

> A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.

*Id* (internal citations omitted).

Plaintiff contends that her allegations, when considered in the aggregate, constitute an adverse employment action because Overall's alleged actions significantly diminished her material responsibilities.[1]

The Court finds that, even under *Burlington's* more liberal standard, Plaintiff either failed to show that her allegations (collectively or individually) constituted adverse employment actions or the requisite causation.

### i. Aggregated Claims

#### a. Overtime

Plaintiff alleges Defendant disciplined her for "completing work assignment[s] outside of her assigned work hours" while similarly situated employees--Balzerini and

---

[1]During oral argument, Plaintiff withdrew her claim that Overall interfered with her failed attempt to get approval from the Job Evaluation Review Panel for a salary grade increase. In her brief, Plaintiff also withdrew her claim that Overall interfered with or delayed her access to the County Appeal Board. The Court, therefore, omits any reference to these allegations.

program supervisors William Richardson and Robert Robbins--are not subject to the same restrictions. Plaintiff also claims that she is required to give a detailed record of her activities during overtime, but Balzerini is not.

There is no evidence that Overall restricted only Plaintiff's work hours. Balzerini testified that Overall advised them both that they must inform her if they need to work over their scheduled times. *See* Def. Exh. H at pp. 69-71. And, while it appears that Plaintiff was the only person disciplined for violating Overall's directive, the evidence also shows that she was the only one who consistently ignored it. *See* Def. Exh. J. There is no evidence that Balzerini (or Richardson or Robbins) ever worked overtime without permission. *See* Pl. Exhs. B at p. 26-28; C at p. 28; H1 at p. 74. Consequently, Plaintiff has not established that she was disciplined more harshly than anyone else for working overtime without approval.

Plaintiff avers in her supplemental affidavit that she was required for some period of time prior to January or February 2005 to give Overall a detailed explanation of work completed after her assigned hours, while Balzerini testified that he was not required to keep detailed records of his overtime work. Pl. Supp. Aff. at ¶9(2); Pl br., Exh. H1 at p. 74; Def. Exh. U. However, as stated, there is evidence that Plaintiff repeatedly ignored Overall's express directives regarding limitations on overtime. Plaintiff was first advised in June 2003 to consult Overall whenever extended overtime was necessary. (Def. Exh. J). She was subsequently reprimanded seven times between September 2004 through May 2005 for failing to comply with this rule and/or with additional limitations on the hours she was to work. *Id.* In contrast, Balzerini testified that he does not often work overtime and he keeps Overall informed as instructed when he does. Pl. Exh. H1

10

at 74.  Considering the context in which the additional restriction was imposed upon Plaintiff, the mere fact that Balzerini was not subjected to the same limitation does not give rise to an inference that the differential treatment was because of Plaintiff's lawsuit. Also, retaliatory animus cannot be inferred from the timing of the restriction because Plaintiff does not indicate when prior to January or February 2005 the additional requirement was imposed.  Plaintiff failed to establish a causal relationship between her additional overtime restriction and her protected conduct.

### b. Meetings with Staff of Subordinates

Plaintiff claims she is the only manager whose presence Overall requires at all subordinate staff meetings.  No evidence supports this claim; Plaintiff fails to establish it as an adverse action against her.

In a February 16, 2005 written reprimand of Plaintiff (which was set aside in the administrative appeal), Overall says that Plaintiff was directed to "follow the chain of command and [] include supervisory staff in business that involves their staff" but that she repeatedly failed to do so.  Def. Exh. G.  Plaintiff cites the deposition testimony of Balzerini and Richardson to substantiate her assertion that Overall's directive was not imposed on anyone else.  However, Balzerini was not asked (at the cited pages) whether Overall directed him to include supervisory staff in meetings with their subordinates.  He merely indicated that it is his practice to either include supervisory staff in a meeting with a supervisor's subordinate or notify the supervisor about the meeting before or afterwards, as a matter of professional courtesy.  *See* Pl. Exh. H1 at pp. 108-109.  And, Richardson was not asked (at the cited pages) whether he was directed to, or does, include supervisory staff in meetings with employees who are not

under his direct supervision.  *See* Pl. Exh. B at pp. 25-26.  Therefore, neither Balzerini

nor Richardson's testimony supports Plaintiff's claim that Overall's directive was

imposed solely upon her.

### c. E-mails

Plaintiff alleges that Overall sends her "accusatory" and "nonfactual" e-mails.

She also says that Overall "diminishes her authority" by copying certain subordinate and

equal employees on e-mails which include "commentary of correction" directed at

Plaintiff, but Plaintiff has not been copied on similar e-mails directed at those

employees.  Pl. Exh. D.  In support, Plaintiff attaches five e-mails sent from Overall to

her in 2005 and 2007 which can reasonably be construed as corrective or accusatory.

Pl. Aff. Exhs. 14, 14a, 14b, 15, 15b.  However, even if the e-mails constitute a materially

adverse employment action, Plaintiff failed to establish the requisite causation.  That is,

none of the e-mails reveals a retaliatory animus on their face, and they are all too far

removed from Plaintiff's filing for one to infer a causal connection from the timing.  *See*

*Clark County School District v Breeden*, 532 U.S. 268, 273 (2001)(When a claim of

retaliation is based on temporal proximity alone, the temporal proximity must be very

close.); *Bolander v BP Oil Co.,* 128 Fed. Appx. 412, 418 (6th Cir. 2005)(unpub. op.), *cert*

*den.,* 126 S.Ct. 396 (2005)(seventeen month gap too long absent other evidence of

retaliation).

### d. Conferences

Plaintiff alleges that she has been excluded from a number of informational

meetings, trainings and/or conferences and that the exclusion significantly diminished

her material responsibilities.  There is no evidence that Plaintiff's attendance at any of

the identified events was part of her "material responsibilities" as an Administrator or that her lack of participation was detrimental to the terms or conditions of her employment or otherwise. Plaintiff merely offers various reasons why she believes she should have been invited instead of (or in addition to) the lower level employees who were sent. This does not constitute adverse action.

### e.    Appeal and Arbitration Hearings

Plaintiff complains that she is no longer allowed to fully participate in appeal and arbitration hearings for staff members under her authority. Plaintiff conducts the disciplinary investigations for staff members under her supervision and presents her findings at the hearings. The prior Manager allowed Plaintiff to remain in the hearings after she completed her presentation, even though she had no say in the final determination. Under Overall, Plaintiff is required to simply give her presentation and leave.

Plaintiff has not indicated how her inability to observe the balance of disciplinary proceedings in which she has no authority causes her harm, and there is no evidence that similarly situated employees are treated differently. No adverse action is shown.

### f.    Organizational Literature and Subordinate Disciplinary Actions

Plaintiff occasionally compiles and prepares literature regarding policies and procedures on behalf of Children's Village. Although she does not author all of the documents in the compilations, she historically included her name on such documents. Plaintiff explains in her deposition:

> Q:    You also have an item number, an item listed, written policies. What does that make reference to?

A:     New and past policies.  Over the years[,] policies, procedures were drafted by myself, Mike Worrell, Peter Balzerini, sometimes two of us, sometimes three of us together, and those are all being rewritten with the current manager's name on them along with the fact that there have been others since the sallyport policies and procedure that I have drafted, and then either Mr. Allesi or Miss Overall put their name on them.

* * *

Q:     And it is your testimony that [the sallyport policy] was material that you prepared exclusively and that you were not given credit for exclusively, is that right?

A:     No, when I'm putting together programming I normally get input from appropriate personnel and then put it into my words, and I think in that particular case I gave credit to whoever was assisting me.

Def. Exh. E at p. 124-125.  Defendant says Plaintiff's name was removed from Children's Village publications because it is not appropriate for her name to appear on publications with multiple authors.

Plaintiff also conducts investigations for disciplinary actions (against subordinates presumably).  But, she says Overall "unfairly diminished her role and investigatory participation in disciplinary investigations" by removing her name from two disciplinary action notices which Plaintiff authored.  Pl. br. at p. 11. Defendant says that since Overall is the decisionmaker responsible for the final approval of discipline or dismissal and Plaintiff is only an investigator, it was inappropriate for Plaintiff to include her name on the notices.

There is no support for Plaintiff's assertion that the removal of her name from organizational literature or disciplinary notices was an adverse action.  Plaintiff does not indicate how she is harmed in her capacity as Administrator or otherwise by the removal of her name from publications which she co-authors or compiles on behalf of Children's

14

Village.  The basis of Plaintiff's claim that removing her name from disciplinary notices diminishes her investigatory role is also unclear.  Plaintiff's role is to investigate and present her findings.  The ultimate decision lies with Overall.  Plaintiff does not explain, and it is not apparent, why crediting her with the investigatory work is imperative to the process or her job or how she is harmed by the omission.  Finally, there is no evidence that similarly situated (or any) employees are treated differently with respect to either the Children's Village publications or the disciplinary notices.

### g.    Secret Meetings

Citing a meeting Overall and Balzerini had with one of Plaintiff's subordinates without her, Plaintiff contends that "secretly taped" meetings "designed to uncover derogatory information" about her create an inference of unlawful retaliation.  Pl. br. at p. 12.  Specifically, Richardson testified that he was called into a meeting with Overall and Balzerini during which they asked about his and Plaintiff's conduct during a joint core team meeting.  The meeting was audiotaped.  (Plaintiff asserts that it was taped without Richardson's permission.  But, he does not indicate (at the cited pages) whether he gave permission, and he states that he was aware that the meeting was being taped because a tape recorder was on the table and he could see it running.  Pl. Exh. B at pp. 15-19.)

Richardson said that he eventually came to feel that the meeting was more about Plaintiff's conduct than his own; that Overall and Balzerini were trying to figure out if Plaintiff was performing her job properly.  He also felt the questioning undermined Plaintiff's authority or work, and he found it unusual that he was called into the meeting with Balzerini, who is not his immediate supervisor, and Overall.

15

Plaintiff does not provide sufficient evidence about the content or context of this meeting to establish it as an adverse action. There is no evidence upon which jurors could base a finding that the meeting was "designed to uncover derogatory information" about her. Nor is there any evidence that other employees were not subjected to similar treatment. And, even though Richardson perceived the questioning to be a diminution of Plaintiff's authority or work, there is no evidence his perception is true, or that the meeting materially impacted Plaintiff in her capacity as Administrator or otherwise.

### h. Announcement about Plaintiff's Lawsuit

Plaintiff alleges that Overall sent a mass e-mail to the staff announcing either that Plaintiff's age discrimination suit was filed or dismissed. But, Plaintiff could not remember the exact wording and does not attach the e-mail.

Plaintiff's conclusory assertion that this was an act of retaliation, without more, is insufficient to establish it as an adverse action. There is also no merit to her assertion that the e-mail was an invasion of her privacy since the lawsuit is a matter of public record.

### i. Threats

In 2005 and 2006, Plaintiff alleges that Overall yelled statements at her which include, "You're done" and "I'm sick of you," in the context of threatening to fire Plaintiff. These alleged comments were made over two years after Plaintiff filed suit and the alleged threats do not on their face give rise to an inference that Plaintiff's lawsuit was the reason the threats were made. Consequently, Plaintiff cannot establish causation either by temporal proximity or the substance of the statements themselves.

### j. Negative Evaluations

Overall evaluated Plaintiff's performance on two occasions prior to the filing of this lawsuit. The evaluations were performed in April 2004 and January 2005. They are overwhelmingly positive. Overall rated Plaintiff as "average" to "outstanding" in all categories except one--cooperation with supervision. In that category, Overall rated Plaintiff "below average." In the remarks, Overall stated that the low rating on supervisor cooperation "reflects [the] need for more effective communication" and was "due to [Plaintiff's] failure to adhere to [her] directives." Def. Exhs. N, O.

Plaintiff asserts that the negative rating limited her ability for advancement, but she does not present any evidence to support the assertion. In any event, there is no evidence from which one could infer that Overall gave the negative rating because Plaintiff filed a lawsuit. The two evaluations were the only two Plaintiff received from Overall and they are virtually identical. There was no decrease in Plaintiff's ratings from one year to the next. Therefore, the substance of the evaluations does not suggest a retaliatory motive. The timing of the evaluations also does not suggest a retaliatory motive inasmuch as the first evaluation was conducted almost one year after Plaintiff filed her lawsuit and the second was nine months later.

### k.    Weekly Intake Meetings

Plaintiff says Overall directed her not to attend weekly intake treatment services core team staff meetings. She says Balzerini was allowed to continue until Plaintiff complained that it was unfair. Overall says she told both Plaintiff and Balzerini that it was unnecessary for them to attend the meetings and Balzerini says that he has not attended since. Plaintiff disputes Balzerini's claim, alleging that he still "goes when he chooses." Pl. Exh. G1 at pp. 109-110.

Plaintiff does not provide a time frame within which she had her discussion with Overall, but it appears that when she did complain Balzerini stopped attending and goes now "when he chooses."  Plaintiff does not indicate when Balzerini "chooses" to go to these meetings, or whether Overall knows that he does this.  Plaintiff failed to establish that this is an adverse action or that there is a causal connection between her lawsuit and Balzerini continuing to attend the meetings (with or without Overall's knowledge).

## I.    Hiring Process

Plaintiff says she has been excluded from the hiring/promotion process for five subordinates since 2003 or 2004.  All hiring decisions ultimately rest with the Manager.  But, in the past (presumably before Overall was Manager), Plaintiff says that either she or Balzerini would conduct interviews for clinicians and counselors with the clinical supervisor.  Pl. Exh. G1 at pp. 108-109.  The administrator not involved in the initial interviews would then be brought in during the second interview or was involved in some other manner in the selection process.  *Id.*  Since 2003 or 2004, Plaintiff says that she has not participated at any stage of the process.  Balzerini testified that before Overall became Manager, he and Plaintiff conducted interviews.  He said that this team approach continued after Overall became Manager, except that he now only interviews with Christina (Nichols) Waszelewski (the supervisor of the clinical staff).

Plaintiff contends that this is a diminution of her material responsibilities as an Administrator because the clinicians and counselors hired fell within her chain of command, although they were not direct reports (they reported to a supervisor who reported to Plaintiff).  Defendant says that Plaintiff has participated in two hirings and a promotion, and that Balzerini or Case Coordinator Kristy Drouillard handled the

18

interview process for two others because Plaintiff is already working ten additional hours per week to handle her current workload.

Plaintiff has not clearly established that she suffered a materially adverse employment action or the requisite causal connection.  It is not clear that Plaintiff has been completely excluded from the hiring/promotion process.  Plaintiff lists five hirings/promotions she claims she did not participate in, but she does not refute Defendant's claim that she has been involved in others.  Second, to the extent Plaintiff relies upon temporal proximity to establish causation, the timing of the alleged exclusion is also unclear as she only asserts that it was sometime in 2003.  Also, even if Plaintiff's proofs are sufficient to state a *prima facie* claim, Defendant's assertion that Plaintiff has not been involved to the extent she was in prior years because of her workload constitutes a legitimate, nondiscriminatory reason.  Plaintiff does not respond to Defendant's assertion and, consequently, failed to establish that it is pretextual.

### m.    Miscellaneous

In a signed and notarized supplement to interrogatories Plaintiff incorporates into her brief, she lists a myriad of additional allegations.  She alleges, *inter alia*, that Overall:

A.    removed her authority to evaluate and finalize performance appraisals of staff members under her supervision, including three counselors and a program supervisor;

B.    gives assignments to staff that Plaintiff directly supervises without her knowledge or involvement;

C.    treats Plaintiff in the same manner as the staff Plaintiff supervises by failing to provide the agenda for meetings in advance, preventing Plaintiff from planning any aspect of the meetings while allowing lesser grade employees to do so, and

19

allowing lesser grade employees to correct and criticize Plaintiff and her staff without allowing Plaintiff to participate in residential and operational meetings designed to correct similarly situated administrators;

D.  minimizes Plaintiff's authority over monthly intake joint care meetings by: a) requiring that Plaintiff obtain approval of agenda items; b) denying Plaintiff the opportunity to review meeting minutes in advance of distribution; c) preventing Plaintiff from obtaining a copy of clinical staff meeting minutes; d) permitting clinical staff assigned to Plaintiff's building to skip core team meetings but requiring the attendance of the clinical staff of similarly situated administrators;

E.  meets with supervisors who report to Plaintiff without including or briefing her on the meetings;

F.  refused to give Plaintiff a copy of the revised organizational chart which contains the chain of command for administration of Children's Village;

G.  excludes Plaintiff from reviewing video recordings pertaining to critical incidents occurring in areas for which she is responsible; and

H.  requires Plaintiff to obtain authorization to perform basic administrative tasks.

*See* Pl. br. at pp. 3-4; Exh. D.  (Plaintiff actually listed fourteen allegations; the ones listed here are those which are not addressed elsewhere in this opinion.).

Plaintiff has not established that these acts individually or collectively constitute a materially adverse action since there is no evidence the alleged acts negatively impacted her "material responsibilities."  Proof of causation is also lacking since none of the alleged acts overtly suggests retaliatory animus and there is no apparent basis to infer a retaliatory motive.

In sum, the Court finds that Plaintiff failed to meet her burden individually on any of her claims, and that the merits of Plaintiff's claims are not buttressed by their volume.

At most, when the claims are considered collectively, Plaintiff only established that her

(and other employees in most instances) responsibilities were modified in a number of

ways after Overall became Manager, and that she was subjected to some acts which

constitute no more than "petty slights, minor annoyances, [or a] simple lack of good

manners." In context, the actions Plaintiff complains of would not dissuade a

reasonable employee from invoking the protections of Title VII and, therefore, they are

not materially adverse. Plaintiff also failed to directly or inferentially establish that her

prior lawsuit was a significant factor or even the likely reason for the modifications and

other actions by Overall.

### ii.     Independent Claim

The only claim Plaintiff says stands on its own is her claim that Overall took

baseless disciplinary actions against her. She bases this claim on three disciplinary

actions: 1) an oral reprimand on September 2, 2003 (documented on September 10,

2003) for failing to communicate with Overall when Plaintiff handles non-routine matters

involving other departments or external agencies; 2) a written reprimand on February

16, 2005 for failing to follow the chain of command and failing to properly report an

incident of alleged abuse of a resident; and 3) a written reprimand on May 13, 2005 for

insubordination based on her violation of Overall's work hours policy. *See* Def. Exhs. F,

G, J. Plaintiff successfully appealed the September 2003 and February 2005

reprimands; they were removed from her personnel file.

Plaintiff contends that these disciplinary actions were unfounded, and

presumably asserts that they were adverse actions such that the third element of her

*prima facie* claim is met. She also argues that the Court can infer a causal connection

21

from the fact that the first reprimand on September 10, 2003 was based in part on an incident which occurred on May 1, 2003, one month after Plaintiff filed her state suit. Plaintiff bases this assertion in part on Overall's September 10 memo in which she notes that she advised Plaintiff on May 1, 2003 to notify her of non-routine matters as they arise, rather than after-the-fact. Def. Exh. F.

There is no merit to this claim. Even if the disciplinary actions constitute adverse actions, there is insufficient evidence for the trier of fact to find that they were causally connected to plaintiff's civil suit.

During oral argument, Plaintiff argued that causation is established by temporal proximity because Overall contemplated disciplinary action against Plaintiff as early as May 1, 2003, one month after Plaintiff filed her complaint. In fact, however, there is no evidence of when Overall first contemplated Plaintiff's September 2003 discipline. Overall only noted in the September 10, 2003 memo that Plaintiff was advised on May 1 to inform her (Overall) of non-routine issues as they arise. Contrary to Plaintiff's assertion at the hearing, Overall declined in her deposition to characterize the incident as one of the bases for the September reprimand. Rather, Overall said that the May 1 discussion was one of several examples of Plaintiff's prior failure to communicate with her as directed. Pl. Exh. F1 at pp. 97-98.

Plaintiff failed to establish causation based on temporal proximity or other grounds. Therefore, summary judgment is warranted on this claim as well.

## V.    CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment in its entirety. Defendant's Motion in Limine is **MOOT**.

22

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 21, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 21, 2007.

s/Linda Vertriest
Deputy Clerk